FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 14, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALICIA PASCHALL,<br><br>        Plaintiff,<br><br>   v.<br><br>AMBER ANDRADE and JULIE HARDISON,<br><br>        Defendants. | No. 2:25-CV-00149-RLP<br><br>ORDER DISMISSING ACTION |

Before the Court is Plaintiff Alicia Paschall's Third Amended Complaint, ECF No. 24. Ms. Paschall appears *pro se*. *Id*. By separate Order the Court granted Ms. Paschall leave to proceed *in forma pauperis*. ECF No. 6. Defendants have not been served.

## LEGAL STANDARD

A plaintiff proceeding *in forma pauperis* under 28 U.S.C. § 1915 is subject to *sua spone* review of his or her complaint, and mandatory dismissal, if the complaint is "frivolous, malicious, fail[s] to state claim upon which relief may be granted, or seek[s] monetary relief from a defendant immune from such relief." *See*

ORDER DISMISSING ACTION * 1

28 U.S.C. § 1915(e)(2)(B); *Coleman v. Tollefson*, 575 U.S. 532, 537-38, 135 S.Ct. 1759 (2015); *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) ("[S]ection 1915(e) not only permits, but requires a district court to dismiss an in forma pauperis complaint that fails to state a claim.").

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325, 109 S.Ct. 1827 (1989), *superseded by statute on other grounds as stated in Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Franklin v. Murphy*, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. *See Jackson v. Arizona*, 885 F.2d 639, 640 (9th Cir. 1989), *superseded by statute on other grounds as stated in Lopez*, 203 F.3d at 1130-31; *Franklin*, 745 F.2d at 1227. Still, "a liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents*, 673 F.2d 266, 268 (9th Cir. 1982).

The facts alleged in a complaint are to be taken as true and must "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 664, 129 S.Ct. 1937 (2009). Mere legal conclusions "are not entitled to the assumption of

ORDER DISMISSING ACTION * 2

truth." *Id*. The complaint must contain more than "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007). It must plead "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

## DISCUSSION

Ms. Paschall's Third Amended Complaint alleges Defendants Julie Hardison, a CPS Supervisor for Washington state, and Federal Probation Officer Amber Andrade interfered with her custody over her children after a Washington child dependency case. *See, e.g.*, ECF No. 24 at 1.

Ms. Paschall alleges Defendants wrongfully removed her son, A.P., from her custody without proper authority or justification. *Id*. at 1-3, 11-14. A.P. allegedly experienced abuse in a foster home Ms. Hardison placed her in, and Ms. Hardison denied A.P. access to various support services. *Id*. at 3-6, 14-15, 17-18. Ms. Paschall alleges that when she attempted to report A.P.'s abuse, Defendants retaliated against her by spreading false claims about her and her case. *Id*. at 6-7, 18-21. Ms. Paschall alleges these actions caused her to lose her housing and destroyed her business. *Id*. at 18-20. Ms. Paschall and A.P. subsequently moved to Kansas. *Id*. at 10. After moving to Kansas, Ms. Hardison allegedly refused to transfer jurisdiction from Washington to Kansas or release the Washington case file, preventing various Kansas agencies from providing services to her or A.P. or

ORDER DISMISSING ACTION * 3

restoring her other son, J.P., to her care. *Id*. at 9-11, 15-17.

Ms. Paschall further claims that Ms. Hardison wrongfully allowed J.P. to move to Texas in violation of various state and federal laws. *Id*. at 8-9.

Ms. Paschall's Third Amended Complaint asserts violations of her constitutional rights under the First, Fourth, Eighth, Tenth, and Fourteenth Amendments, as well as a bevy of state and federal laws.[1] *See generally* ECF No. 24. She seeks the restoration of her parental rights, reunification with A.P., expungement of false or retaliatory reports, federal investigation of Defendants, the transfer of her children's dependency cases to Kansas, and unspecified damages. *Id*. at 23.

---

[1] In the Court's first Order to Amend or Voluntarily Dismiss, the Court directed Ms. Paschall to organize her Amended Complaints by causes of action, and then clearly state the facts supporting each cause of action. ECF No. 16 at 6. Ms. Paschall's Third Amended Complaint does not follow these directions. Instead, the Third Amended Complaint is organized around a timeline of events, with Ms. Paschall briefly listing constitutional and statutory violations stemming from each occurrence with minimal factual explanation. Mr. Paschall's failure to properly organize her Third Amended Complaint hampers the Court's ability to ascertain whether she states a valid claim for relief.

ORDER DISMISSING ACTION * 4

*Ability to Grant Relief Requested*

Ms. Paschall fails to allege facts in the Third Amended Complaint which plausibly show she can obtain much of the relief she requests. Ms. Paschall requests the Court order her reunification with A.P., but she does not allege Defendants have custody of her child. To the contrary, Ms. Paschall appears to allege that A.P. resides with her in Kansas. *See, e.g.*, *id*. at 9. Thus, she does not plausibly allege that Defendants can reunify her with A.P. Similarly, Ms. Paschall does not plausibly allege that Defendants have possession of records which they can expunge.

Ms. Paschall also requests the restoration of her parental rights, the transfer of her children's dependency cases to Kansas, and the federal investigation of Defendants. However, she fails to plausibly allege Defendants have the power to grant her this relief. The Court lacks jurisdiction to issue an injunction against non-parties. *Zepeda v. U.S. I.N.S.*, 753 F.2d 719, 727 (9th Cir. 1985). As such, she fails to adequately state a claim for the above relief.

*Standing*

Many claims made in Ms. Paschall's Third Amended Complaint arise from injuries alleged to be suffered not by her, but by her children. Ms. Paschall lacks standing to assert claims for injury suffered by her children absent a showing of

ORDER DISMISSING ACTION * 5

how she was personally harmed in an individual way. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 381, 144 S. Ct. 1540 (2024).

First, Ms. Paschall continues to make claims arising from abuse A.P. allegedly suffered in foster care. Second, Ms. Paschall asserts claims arising from Defendants' alleged actions preventing A.P. and J.P. from obtaining support services. As Ms. Paschall does not attempt to demonstrate how she personally suffered an injury as a result of these actions, she lacks standing to raise these claims.

Ms. Paschall also lacks standing over her claims arising from Ms. Hardison's refusal to transfer her children's cases to Kansas, as she does not demonstrate she was personally harmed by the refusal to transfer the case or Kansas's consequent refusal to provide A.P. services. While Ms. Paschall does allege she is harmed due to Kansas's inability to reunite her with her children absent a transfer, she fails to plausibly allege how transfer of the case would result in reunification. Ms. Paschall also fails to demonstrate she personally suffered an injury due to J.P.'s move to Texas, distinct from J.P.'s removal from her custody in general. For want of standing, these claims also fail.

*Immunity*

"[S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child

ORDER DISMISSING ACTION * 6

dependency proceedings." *Meyers v. Contra Costa Cnty. Dep't of Soc. Servs.*, 812 F.2d 1154, 1157 (9th Cir. 1987). This immunity extends to a social worker's decision to remove a child from a parents' custody. *McKinney v. Washington,* 297 F. App'x 593, 595 (9th Cir. 2008).

Many of Ms. Paschall's claims arise from Ms. Hardison's removal of A.P. Ms. Hardison enjoys absolute immunity from these claims. In parts of the Third Amended Complaint, Ms. Paschall denies the existence of an open dependency case and portrays A.P.'s removal as being extra-judicial. *See, e.g.*, ECF No. 24 at 1. However, these representations are at odds with Ms. Paschall's later statements that Defendants withheld case documents or otherwise refused to allow transfer of the child dependency case to Kansas, *See id*. at 9-11, and Ms. Paschall's claims that "[t]he *initial handling* of [A.P.]'s *case* violated fundamental state and federal procedures." *Id*. at 23 (emphasis added). These statements make it clear A.P.'s removal and placement in foster care was judicially sanctioned as part of a dependency case. At the very least, Ms. Paschall does not plausibly allege that Defendants removed A.P. from her custody independently of a dependency case. Therefore, Ms. Hardison enjoys absolute immunity from claims stemming from the removal and initiation of the dependency case.

Ms. Hardison is also entitled to immunity for her quasi-prosecutorial functions connected with the pursuit of A.P. and J.P.'s child dependency

ORDER DISMISSING ACTION * 7

proceedings. These actions include her decisions to permit J.P. to move to Texas, to not to transfer the child dependency cases to Kansas, and to not release the case files to Kansas.

United States Probation Officers, such as Officer Andrade, are entitled to absolute quasi-judicial immunity from injunctive relief for their role in investigating, preparing, and submitting reports. *See Mullis v. U.S. Bankr. Ct. for Dist. of Nevada*, 828 F.2d 1385, 1394 (9th Cir. 1987); *Dorman v. Higgins*, 821 F.2d 133, 138 (2d Cir. 1987) (federal probation officers immune from suit); *Tripati v. U.S.I.N.S.*, 784 F.2d 345, 348 (10th Cir. 1986) (federal probation officers immune from suit).

Many of Ms. Paschall's allegations against Officer Andrade appear to stem from Officer Andrade's investigation of Morgan Jones, Ms. Paschall's romantic partner.

Mr. Jones is currently serving a 50-year term of supervised release as a consequence of a 2008 conviction for Travel for the Purpose of Engaging in Illicit Sexual Conduct. ECF No. 169 in *U.S. v. Jones*, Case No. 2:08-CR-06044-EFS. One of Mr. Jones' conditions of supervised release is that he shall have no contact with children without the advance approval of his probation officer. Id. at 5. On April 16, 2025, Officer Andrade petitioned the Court for a warrant alleging Mr. Jones violated his terms of supervised release by having unapproved contact with

ORDER DISMISSING ACTION * 8

Ms. Paschall's children. ECF No. 311 in *U.S. v. Jones*, Case No. 2:08-CR-06044-EFS. The Court ordered Mr. Jones to be detained as a result of the alleged supervised released violations, ECF No. 315 in *U.S. v. Jones*, Case No. 2:08-CR-06044-EFS. Ms. Paschall initiated this action on May 7, 2025. ECF No. 1. Her previously dismissed Amended Complaint is peppered with references to Officer Andrade's investigation of Mr. Jones. See, e.g., ECF No. 3 at 28.

While Ms. Paschall stresses that Officer Andrade's actions occurred outside her role as a probation officer, it appears that some allegations against her nevertheless occurred within this context. For example, Officer Andrade's contacts with Ms. Hardison, a social worker, and her assistance in preventing A.P. from returning to Ms. Paschall's custody appear to have occurred in the context of Officer Andrade's investigation of Mr. Jones's unlawful contacts with Ms. Paschall's children. To the extent Ms. Paschall's claims arise from Officer Andrade's investigation of Mr. Jones and his contact with A.P., Officer Andrade enjoys absolute immunity from suit.

Rooker-Feldman *Doctrine*

Most of Ms. Paschall's claims stem from the removal and placement of A.P. in foster care, which she alleges was unjustified and procedurally improper. As stated in this Court's prior order to amend or voluntarily dismiss, these claims are barred by the *Rooker-Feldman* doctrine.

ORDER DISMISSING ACTION * 9

The *Rooker-Feldman* doctrine stems from two Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303 (1983). The doctrine "is a well-established jurisdictional rule prohibiting federal courts from exercising appellate review over final state court judgments." *Reusser v. Wachovia Bank, N.A.*, 525 F.3d 855, 858-59 (9th Cir. 2008). Congress vested "the United States Supreme Court, not the lower federal courts, with appellate jurisdiction over state court judgments." *Cooper v. Ramos*, 704 F.3d 772, 777 (9th Cir. 2012). "The doctrine [therefore] bars a district court from exercising jurisdiction not only over an action explicitly styled as a direct appeal, but also over the 'de facto equivalent' of such an appeal." *Id.* (quoting *Noel v. Hall*, 341 F.3d 1148, 1155 (9th Cir. 2003)).

"To determine whether an action functions as a de facto appeal, [courts] 'pay close attention to the relief sought by the federal-court plaintiff.'" *Cooper*, 704 F.3d at 777-78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)).

> If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court, and seeks relief from a state court judgment based on that decision, *Rooker-Feldman* bars subject matter jurisdiction in federal district court. If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, *Rooker-Feldman* does not bar jurisdiction.

*Noel*, 341 F.3d at 1164.

ORDER DISMISSING ACTION * 10

"There are two kinds of cases in which such a forbidden de facto appeal might be brought." *Id.* at 1163. "First, the federal plaintiff may complain of harm caused by a state court judgment that directly withholds a benefit from (or imposes a detriment on) the federal plaintiff, based on an allegedly erroneous ruling by that court." *Id.* "Second, the federal plaintiff may complain of a legal injury caused by a state court judgment, based on an allegedly erroneous legal ruling, in a case in which the federal plaintiff was one of the litigants." *Id.* "*Rooker-Feldman* thus applies only when the federal plaintiff both asserts as her injury legal error or errors by the state court and seeks as her remedy relief from the state court judgment*.*" *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1140 (9th Cir. 2004).

Only after a district court first determines a case involves a forbidden *de facto* appeal does the "inextricably intertwined" test articulated in *Feldman* come into play. *Noel*, 341 F.3d at 1158. In *Feldman*, the Supreme Court stated:

> If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application [for relief], then the District Court is in essence being called upon to review the state court decision. This the District Court may not do.

*Bianchi*, 334 F.3d at 898 (alteration in original) (quoting *Feldman*, 460 U.S. at 483 n.16). Accordingly, "[o]nce a federal plaintiff seeks to bring a forbidden de facto appeal, as in *Feldman*, that federal plaintiff may not seek to litigate an issue that is 'inextricably intertwined' with the state court judicial decision from which the

ORDER DISMISSING ACTION * 11

forbidden de facto appeal is brought." *Noel*, 341 F.3d at 1158. A federal district court must then "refuse to decide any issue raised in the suit that is 'inextricably intertwined' with an issue resolved by the state court in its judicial decision." *Id*.

Ms. Paschall's claims arising from the removal of A.P. and his placement in foster care are forbidden *de facto* appeals of Washington child dependency proceedings. Ms. Paschall's requested relief makes this fact abundantly clear. She seeks the return of her son and the restoration of her parental rights, or in other words, for the state court's dependency determination to be overturned.

Ms. Paschall at times frames her claim as a challenge to Defendants' conduct relating to her child's placement in foster care. However, review of her Third Amended Complaint and the other filings in the case, *see, e.g.*, ECF No. 19, make it clear she actually challenges the state court's decision to order the removal of A.P. and his placement in foster care generally.

Ms. Paschall's claims concerning Defendants' purportedly wrongful actions to remove A.P. and initiate a dependency case are inextricably intertwined with the outcome of the state court child dependency proceeding. Ms. Paschall herself makes this abundantly clear – she states that because A.P.'s removal was improper, "the entire process [was rendered] unconstitutional and void," *id*. at 24, and "because the intake process was never validly opened or reviewed, **all actions that followed – including [A.P.]'s removal, placement, and loss of services – were**

**procedurally and constitutionally unlawful**." *Id*. at 25 (emphasis in original). Therefore, all of Ms. Paschall's claims stemming from the removal of A.P. and his placement in foster care are barred by the *Rooker-Feldman* doctrine as a de facto appeal of the state court dependency case.

*Retaliation*

The above identified legal infirmities leave only Ms. Paschall's retaliation claims. Ms. Paschall asserts Defendants' purported retaliation against her reporting of A.P.'s abuse in foster care violated various constitutional amendments and federal laws, giving rise to liability under 42 U.S.C. § 1983, § 1985(3), and other federal statutes. Each legal theory is addressed in turn.

§ 1983 *Claims*

Ms. Paschall asserts §1983 claims stemming from retaliation she alleges violated her First, Fifth, and Fourteenth Amendment rights.

The First Amendment states that "Congress shall make no law . . . abridging the freedom of speech." U.S. Const. Amend. I. "A plaintiff may bring a Section 1983 claim alleging that public officials, acting in their official capacity, took action with the intent to retaliate against, obstruct, or chill the plaintiff's First Amendment rights." *Arizona Students' Ass'n v. Arizona Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016). "To bring a First Amendment retaliation claim, the plaintiff must allege that (1) it engaged in constitutionally protected activity; (2)

the defendant's actions would 'chill a person of ordinary firmness' from continuing to engage in the protected activity; and (3) the protected activity was a substantial motivating factor in the defendant's conduct—i.e., that there was a nexus between the defendant's actions and an intent to chill speech." *Id*. Bare assertions of a retaliatory motive are insufficient to state a retaliation claim. *Rizzo v. Dawson*, 778 F.2d 527, 533 n. 4 (9th Cir. 1985).

Ms. Paschall's First Amendment retaliation claims rest on Defendants retaliation against her for reporting A.P.'s alleged abuse in foster care by spreading false claims about her, "coercing" her to give up her Section 8 housing voucher, and causing her to lose business. First, Ms. Paschall's allegations are too vague to ascertain how Defendants "coerced" her into giving up her housing, or how they caused her to lose business. ECF No. 24 at 18-19. Therefore, Ms. Paschall fails to state a First Amendment claim stemming from this purported retaliation. As for her remaining First Amendment allegations, Ms. Paschall fails to adequately allege facts demonstrating a retaliatory motive. While Ms. Paschall asserts Defendants disseminated false claims against her to retaliate against her reporting A.P.'s abuse, she fails to plausibly suggest why Defendants would take these retaliatory measures, or allege any nexus between Defendants' actions and her reporting of abuse. Therefore, her First Amendment retaliation claims fail.

ORDER DISMISSING ACTION * 14

Ms. Paschall's Fifth Amendment retaliation claim alleges Defendants deprived her of housing and business without due process. This claim is better described as a Fifth Amendment takings claim. As stated above, Ms. Paschall's fails to adequately allege how Defendants deprived her of housing or business. Moreover, a Fifth Amendment takings claim generally requires the Government to directly appropriate property – something Ms. Paschall does not allege in this case. *See Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 539, 125 S. Ct. 2074 (2005). Therefore, her Fifth Amendment claim fails.

Ms. Paschall finally asserts her Fourteenth Amendment substantive and procedural due process rights were violated. Yet again, Ms. Paschall's allegations are too vague to state a claim. Ms. Paschall only asserts that Defendants' retaliation denied her the ability to seek redress, ECF No. 24 at 7, and that they "interfere[d]" with her family, housing, and economic stability. *Id*. at 19. Without more explanation how Defendants frustrated her ability to seek redress or interfered with her family,[2] housing, and economic stability, Ms. Paschall fails to state a claim.

---

[2] To the extent that Ms. Paschall alleges that the removal of her children was retaliatory, such a claim is barred by the *Rooker-Feldman* doctrine as discussed above.

Ms. Paschall also alleges Defendants retaliated against her by "[f]abricating evidence and falsifying case notes to justify child removal" in violation of her Fourteenth Amendment due process and equal protection rights. ECF No. 24 at 21. As discussed above, these claims are barred by the *Rooker-Feldman* doctrine as they are inextricably intertwined with her *de facto* appeal of her child dependency case.

§ 1985(3) Claims

Ms. Paschall asserts two §1985(3) claims. The first alleges a conspiracy by Defendants to intimidate or retaliate against her for attempting to bring attention to A.P.'s abuse in foster care. ECF No. 24 at 6. The second asserts a conspiracy between defendants to "obstruct justice or deprive equal protection of the laws."

A § 1985(3) claim requires plaintiffs to allege and prove four elements:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of this conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*United Brotherhood of Carpenters and Joiners of America v. Scott*, 463 U.S. 825, 828-29, 103 S.Ct. 3352 (1983). The second element §1985(3) claim generally requires evidence that a deprivation of the plaintiff's rights was motivated by racial animus. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

Ms. Paschall fails to articulate how Defendants deprived her of the equal

ORDER DISMISSING ACTION * 16

protection of the laws, or of equal protection and immunities under the laws, and how this deprivation was motivated by racial animus against her. Therefore, her §1985(3) claims fail.

*Other Statutory Claims*

Ms. Paschall also alleges Defendants' retaliation violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12203, 12132, the Child Abuse Prevention and Treatment Act (CAPTA), 42 U.S.C. § 5106a(b)(2), 18 U.S.C. § 1512(b), the Fair Housing Act (FHA), 42 U.S.C. § 3601 et. seq., the Medicaid Act, 42 U.S.C. § 1396a, and the Family First Prevention Services Act (FFPSA). Ms. Paschall fails to articulate a claim under any statute, or a statutory right which can be vindicated under a § 1983 claim.

42 U.S.C. § 12203(a) of the ADA prohibits retaliation in an employment context. As Defendants did not employ Ms. Paschall, this statute does not apply. 42 U.S.C. § 12132 prohibits denial of the benefits of services, programs, or activities of a public entity by reason of disability. However, Ms. Paschall fails to articulate how Defendants denied her of a benefit on the basis of her disability. Therefore, she fails to state an ADA claim.

Ms. Paschall alleges Defendants' retaliation violated CAPTA's requirement that states create channels for reporting abuse. However, there is no law that CAPTA creates a privately enforceable right to report abuse free from retaliation,

ORDER DISMISSING ACTION * 17

or that government actors' retaliation for reporting abuse violates any CAPTA right. Therefore, Ms. Paschall fails to state a claim under this statute.

18 U.S.C. § 1512(b) criminalizes witness tampering and does not create a private civil cause of action.

To state a claim for retaliation under the FHA, 42 U.S.C. § 3617, a plaintiff must allege (1) they engaged in some activity protected by the FHA; (2) an adverse housing consequence causally linked to the protected activity; and (3) damages. *San Pedro Hotel Co. v. City of Los Angeles*, 159 F.3d 470, 477 (9th Cir. 1998). Ms. Paschall fails to allege she was retaliated against for engaging in some activity protected by the FHA. As discussed above, she also fails to specifically allege how Defendants interfered with her housing, and fails to plausibly allege a retaliatory motive. Therefore, she fails to state a claim for retaliation under the FHA.

42 U.S.C. § 1396a, which lies out requirements for state plans for Medicaid, does not create a private cause of action, and there is no law holding that it creates any right to be free from retaliation which can be vindicated by a § 1983 claim.

Finally, Ms. Paschall fails to identify any portion of the FFPSA which gives rise to a private cause of action or a right which can be vindicated by a § 1983 claim.

For all the above reasons, Ms. Paschall fails to state a claim for retaliation.

The Court previously provided Ms. Paschall two opportunities to amend her complaints to assert a claim. In all three Amended Complaints Ms. Paschall filed,

ORDER DISMISSING ACTION * 18

she failed to state a cognizable legal claim. For that reason, the Court declines to provide Ms. Paschall a fourth attempt to articulate a claim as it is clear that further opportunities to amend would be futile. Ms. Paschall's Third Amended Complaint is dismissed for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2). Ms. Paschall's outstanding Motion for Appointment of Counsel and Request for Subpoena of Records is denied as moot.

**IT IS HEREBY ORDERED:**

1. Plaintiff Alicia Paschall's Third Amended Complaint, **ECF No. 24**, is **DISMISSED without prejudice** for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915(e)(2).

2. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal of this Order would not be taken in good faith and would lack any arguable basis in law or fact.

3. Plaintiff Alicia Paschall's Motion for Appointment of Counsel and Request for Subpoena of Records, **ECF No. 25**, is **DENIED** as moot.

**IT IS SO ORDERED**. The Clerk of Court is directed to enter this Order, enter judgment, provide copies to Plaintiff and counsel, and **CLOSE** the file.

DATED November 14, 2025.



_____
REBECCA L. PENNELL
UNITED STATES DISTRICT JUDGE